UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CECIL C. COX, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-08-2758 |
| | § | |
| STATE OF TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Pending before the Court is the defendants', Santiago Garcia ("Garcia") and Jason Harper ("Harper") ("Garcia" and "Harper" collectively referred to as the "defendant officers"), motion for summary judgment and brief in support (Docket Entry No. 60) and the plaintiffs', Cecil C. Cox ("C. Cox"), individually and as representative of the Estate of Larry Louis Cox, and Robert Earl Cox (R. Cox") (collectively, the "plaintiffs"), response (Docket Entry No. 64). After having carefully considered the pleadings, the parties' submissions, the uncontested facts and the applicable law, the Court determines that defendants' motion for summary judgment should be DENIED in part and GRANTED in part.

## II. FACTUAL BACKGROUND

The plaintiffs initiated the instant action on behalf of their brother, Larry Louis Cox ("L. Cox"), a former inmate at the Estelle Unit of the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), against the State of Texas, the TDCJ, the University of Texas Medical Branch-Texas Department of Justice Hospital ("UTMB"), Garcia, a correctional officer at the Estelle Unit, and Harper, a correctional officer at the Estelle Unit

(collectively, the "defendants"), alleging, *inter alia*, that the defendants' excessive force and deliberate medical indifference caused their brother's death. It appears that on Tuesday, January 23, 2007, inmates located in the C-wing section of the Estelle Unit were being escorted out of their cells for the purpose of conducting pest control fumigation inside their cells. L. Cox, an inmate located in this section of the Estelle Unit was handcuffed and escorted out of his cell by Garcia and Harper, prison guards in the Estelle Unit. After the fumigation of his cell was completed, he was then escorted back into his cell by the same officers. Shortly thereafter, he began kicking wildly and kicked Garcia's right leg. At this point, the facts are disputed as Garcia and Harper assert that they then placed L. Cox against the wall inside his cell, while Garcia attempted to reason with and calm him down. They report that L. Cox thereafter kicked Garcia two more times and attempted to pull away from them at which time they placed him on the cell floor. They further contend that on the way down to the floor L. Cox hit his head on the metal railing on a locker box.

Conversely, the plaintiffs, in their complaint, allege that Garcia and Harper used excessive force against L. Cox on January 23, 2007.[1] Specifically, the plaintiffs complain that after placing L. Cox in hand restraints, Garcia and Harper "proceeded to maliciously and sadistically throw him down to the concrete floor and savagely beat him until he bled profusely from [the] head." During this encounter, the plaintiffs contend that Garcia and Harper

---

1The plaintiffs allege in their complaint that the defendant officers' use of force incident occurred on January 3, 2007. However, all other evidence contained in the record, including the evidentiary support submitted by the plaintiffs in opposition to the defendant officers' motion for summary judgment, indicate that the incident actually occurred on January 23, 2007. Thus, the Court will presume that the plaintiffs made an omission and that the date of the incident as referenced in the complaint should be interpreted to mean January 23, 2007.

"repeatedly slammed [L. Cox's] head into his metal bunk and locker causing him severe pain." As a consequence, the plaintiffs contend that L. Cox sustained a fractured C3 and C6 vertebrae in his neck and a broken nose.

The plaintiffs allege that after the incident, L. Cox was treated by UTMB medical personnel.2 They contend that although UTMB personnel applied twenty-one stitches to close the lacerations to L. Cox's face following the incident, they failed to discover the fractured vertebrae in his neck, merely prescribing weak pain relievers to him and returning him to his cell, despite his complaints of neck pain.

The plaintiffs further aver that for two days after his physical confrontation with Garcia and Harper, L. Cox lay motionless in his cell where he was forced to urinate and defecate on himself due to his inability to move as a result of the neck injury he sustained. During this time, they contend that L. Cox repeatedly informed prison personnel that he was unable to move his upper and lower extremities. Nevertheless, they allege that the defendants took no action, provided L. Cox with no medical treatment and permitted his condition to rapidly deteriorate and reach a state where nothing could be done to save his life.

On January 26, 2007, at approximately 10:00 a.m., L. Cox was transported from the Estelle Unit by ambulance to the Galveston Unit of the University of Texas Medical Branch Emergency Room with multiple injuries. Upon his arrival, he was admitted into the intensive care unit with a "C-Spine injury, quadriplegi[a] and renal failure." (Docket Entry No. 64, Ex. 11). He was placed on the serious critical list at approximately 10:45 p.m. on that same day. He remained in the intensive care unit until his death on February 6, 2007, at approximately 8:55

2 The evidence in the record denotes that on the day of the January 23, 2007 use of force incident, L. Cox was transported to the local emergency room at Huntsville Memorial Herman for sutures and further evaluation.

a.m. *Id.* At that time, the provisional cause of his death was declared to be "Sepsis and Cardiac Arrest." *Id.* The plaintiffs contend that the Galveston County Medical Examiner ultimately ruled L. Cox's death a homicide caused by "medical neglect complicating blunt force trauma."

On September 12, 2008, the plaintiffs, C. Cox, as representative and heir of the Estate of L. Cox, and R. Cox, as legal heir of the Estate of L. Cox, commenced this suit pursuant to 42 U.S.C. § 1983,3 alleging violations of their brother's Fourth, Fifth, Eighth, and Fourteenth Amendment rights and state law claims of assault and battery. The defendant officers now move for summary judgment on the plaintiffs' claims for deliberate medical indifference, declaratory judgment and injunctive relief. They also seek a complete dismissal of the plaintiffs' complaint, alleging that the plaintiffs are not the proper parties to prosecute wrongful death and survival causes of action against them.4

## III. CONTENTIONS OF THE PARTIES

### A. The Defendants' Contentions

The defendant officers contend that they are entitled to summary judgment on the plaintiffs' claim for medical indifference brought pursuant to 42 U.S.C. § 1983 due to their entitlement to qualified immunity. Next, they contend that they are entitled to a complete

3 Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any … person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. By its terms, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).

4 Because the plaintiffs acknowledge that they abandoned their wrongful death causes of action upon the filing of their First Amended Complaint, the Court will only address the defendants' standing argument relative to their survival causes of action. Thus, the defendant officers' motion for summary judgment for lack of standing as to the plaintiffs' wrongful death causes of action is hereby DENIED as moot.

dismissal of the plaintiffs' complaint because the plaintiffs have not demonstrated that they are the proper parties to prosecute their wrongful death and survival causes of action. Finally, the defendant officers aver that the plaintiffs lack standing to obtain the declaratory and injunctive relief they seek.

**B. The Plaintiffs' Contentions**

The plaintiffs contend that the defendant officers' motion for summary judgment should be denied in its entirety. First, they contend that the defendant officers are not entitled to qualified immunity on any of their constitutional claims. Second, they assert that upon the filing of their First Amended Original Complaint on December 15, 2008, they elected to only pursue their survival claims against the defendant officers through C. Cox, in his capacity as representative and heir of the Estate of L. Cox, and R. Cox, as legal heir to the Estate of L. Cox. They contend that C. Cox and R. Cox are the rightful heirs to the Estate of L. Cox and that no administration is pending or necessary. Accordingly, the plaintiffs contend that the defendant officers' motion for summary judgment should be denied as they have standing to bring the instant survival action. Alternatively, the plaintiffs seek leave to amend their complaint to correct any deficiencies should the Court determine that they have failed to meet their burden as to any claim addressed by the defendant officers and/or plead.

**IV. STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The [movant] bears the initial burden of identifying those portions of the

pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322-325 (1986)). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251-252).

## V. ANALYSIS & DISCUSSION

### A. The Plaintiffs' Standing to Bring Their Survival Causes of Action

The defendant officers move for a complete dismissal of the plaintiffs' complaint, alleging that the plaintiffs are not the proper parties to assert wrongful death and survival causes

of action. The plaintiffs, in contrast, argue that that they are L. Cox's brothers, and his heirs at law, and are thus, entitled to proceed with the instant action under the Texas Survival Statute, specifically TEX. CIV. PRAC. & REM. CODE § 71.021. "Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing 42 U.S.C. § 1988(a)). In accordance with § 1988, this Court is required to look to Texas state law to decide whether the plaintiffs have standing to assert survival causes of action against the defendant officers under 42 U.S.C. § 1983. *Pluet*, 355 F.3d at 383 – 84; *see also Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000).

The Texas Survival Statute provides, in relevant part, that "[a] cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person . . . ." TEX. CIV. PRAC. & REM. CODE § 71.021(a). In this regard, a survival action "preserves a claim for the estate rather than creating a new cause of action for those surviving the decedent." *Pluet*, 355 F.3d at 384 (citing *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 857 (Tex. App. – San Antonio 1997, writ denied). As such, "[t]he parties to a survival action seek adjudication of *the decedent's own* claims for the alleged injuries inflicted upon [him] by the defendant[s]." *Austin Nursing Center v. Lovota*, 171 S.W.3d 845, 850 (Tex. 2005) (emphasis in original). Under the Texas Survival Statute, "[a] personal injury action survives . . . in favor of the heirs, legal representatives and estate of the injured person." TEX. CIV. PRAC. & REM. CODE § 71.021(b). Section 3 of the Texas Probate Code defines "heirs" to include "those persons, including the surviving spouse, who are entitled under the statutes of descent and distribution to the estate of a decedent who dies intestate." TEX. PROB. CODE ANN § 3(o). A "personal representative" or "representative" of an estate, is defined under this section to

include an "executor, independent executor, administrator, independent administrator, [and] temporary administrator, together with their successors." TEX. PROB. CODE ANN § 3(aa).

Ordinarily, "only the estate's personal representative has the capacity to bring a survival claim." *Id.* (citing *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971)). Under certain circumstances, however, heirs at law may be permitted to commence a suit on behalf of a decedent's estate. *Austin Nursing Center*, 171 S.W.3d at 850 - 51 (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31 – 32 (Tex. 1998). To this end, the Texas Supreme Court has "held that '[h]eirs at law can maintain a survival suit during the four-year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending and none [is] necessary.'" *Id.* "[A] family agreement regarding the disposition of the estate's assets can provide support for the assertion that no administration of the decedent's estate is necessary." *Austin Nursing Center*, 171 S.W.3d at 851 (citing *Shepherd*, 962 S.W.2d at 32 – 34).

Here, the instant suit was initiated by C. Cox, as representative and heir of the Estate of L. Cox, and R. Cox, as legal heir of the Estate of L. Cox. Although it appears that the plaintiffs have initiated the action necessary to have C. Cox appointed as the legal representative of his deceased brother's estate by filing a request for letters of administration with a probate court in Walker County, Texas, no such appointment and/or designation appears to have been made to date. Thus, C. Cox lacks standing to maintain the instant action as the legal representative of L. Cox's estate.

While it is true that C. Cox has not provided this Court with proof that he has been appointed as the legal representative of L. Cox's estate and that he has received approval from the probate court to proceed with this lawsuit in his representative capacity, sufficient evidence

exists in the record, however, to establish that as siblings, both C. Cox and R. Cox, have standing as "heirs" to bring the instant action under the Texas Survival Statute. First, the plaintiffs plead that they are the decedent's brothers and that the decedent died intestate on February 6, 2007, with no spouse, children or surviving parents. Second, the plaintiffs assert that the decedent died without owning any real property and that his estate has no debts and/or fewer than two debts. Third, the plaintiffs plead that "all interested parties entered into an agreement between themselves concerning the distribution of any estate property." (Docket Entry No. 28 at 9.) Finally, the plaintiffs declare, both in their First Amended Original Complaint and response in opposition to the defendants' motion, that no administration of the estate is pending and none is necessary. The fact that the plaintiffs' have filed an Application for Letters of Administration in a probate court in Walker County, Texas does not cause the estate to be "pending" for purposes of applying the survival statute exception. *See Pratho v. Zapata*, 157 S.W.3d 832, 840 (Tex. App. – Fort Worth 2005, no pet. h.) (reasoning that "an estate is not 'pending' for purposes of applying the exception to the survival statute unless and until a probate court appoints a personal administrator of the estate"). Therefore, when construing the facts in the light most favorable to the plaintiffs, the Court finds that the plaintiffs have standing as "heirs" to proceed with the instant survival action and defendants' motion for summary judgment in this regard is denied.

**B. The Plaintiffs' Claim for Medical Indifference Under Section 1983**

The defendant officers also move for summary judgment on the plaintiffs' § 1983 deliberate medical indifference claim, asserting that they were not personally involved in summoning medical care for L. Cox following the January 23, 2007, incident and as such, they are entitled to qualified immunity with regard to the plaintiffs' claim for medical indifference. Under the qualified immunity doctrine, governmental officers are safeguarded "from civil

liability for damages based upon the performance of discretionary functions if [their] acts were objectively reasonable in light of then clearly established law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001)). The qualified immunity doctrine has essentially evolved to provide "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). "When a defendant invokes [the] qualified immunity [defense], the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Atteberry*, 430 F.3d at 253 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

The Fifth Circuit has set forth a two-step analysis to govern the determination of whether the defendant officers are entitled to qualified immunity. First, a court must determine "whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right." *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)). "If no constitutional right has been violated, the inquiry ends and the defendants are entitled to qualified immunity." *Id.* If, however, the plaintiff has alleged a violation of a clearly established constitutional right, the court must next examine "whether the [defendants'] conduct was objectively unreasonable under established law." *Linbrugger*, 363 F.3d at 540 (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)); *accord Atteberry*, 430 F.3d at 253. The Fifth Circuit "has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact." *Atteberry*, 430 F.3d at 256 (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (stating that "objective

reasonableness is a matter of law for the courts to decide, not a matter for the jury") (other citations omitted).

"[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005 (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). In this regard, "[a]n officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law." *Id.* "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id.*

In this case, the plaintiffs contend that the defendant officers were deliberately indifferent to L. Cox's serious medical needs. Generally, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480, 125 L.Ed.2d 22 (1993)). In this regard, the Eighth Amendment's prohibition against cruel and unusual punishment "has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care." *Ledee v. Wilkinson*, No. 09-cv-275, 2009 WL 1936764, * 6 (W.D. La., July 6, 2009) (citing *Farmer*, 511 U.S. at 832, 114 S.Ct. at 1976); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999)). "In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976)).

"Deliberate indifference, [however,] is an extremely high standard to meet." *Domino*, 239 F.3d at 756. Claims of incorrect diagnosis, malpractice and/or negligent treatment, standing alone, are insufficient to state a claim for deliberate indifference. *See Domino*, 239 F.3d at 756 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (recognizing that an incorrect diagnosis by prison medical personnel is insufficient to state a claim for deliberate indifference); *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that "malpractice and negligent treatment do not rise to the level of a constitutional tort."). A claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," nevertheless, is sufficient to state a claim. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle*, 429 U.S. at 105-106, 97 S. Ct. 285). In *Estelle v. Gamble*, for example, the Supreme Court described the deliberate indifference standard as follows:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 - 05, 97 S.Ct. 285, 50 L.Ed.2d 251 (citation omitted, footnotes omitted)).

To state a viable claim under the Eighth Amendment premised on a prison official's deliberate indifference to a prisoner's serious medical needs, the plaintiffs must allege that the prison officials "refused to treat [L. Cox], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for

any serious medical needs." *Domino*, 239 F.3d at 756 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Adhering to the "subjective recklessness [standard] as used in criminal law", the United States Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Further, "[u]nder exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir.1994) (citing *Farmer*, 511 U.S. at 842 & n. 8, 114 S.Ct. 1970)).

Here, the plaintiffs allege that the defendant officers were personally involved in the January 23, 2007, incident which gave rise to L. Cox's serious medical injuries and that a causal connection exists between the defendant officers' use of excessive force and the deprivation of L. Cox's constitutional rights. They further argue that the defendant officers, while being aware of L. Cox's serious injuries, intentionally ignored his serious medical needs based on either expedience or ignorance to the consequences.

As support for their position, the plaintiffs have submitted various records produced by the defendants in response to discovery. According to a recorded interview conducted by Cesar Sanchez of the Office of the Inspector General at UTMB in Galveston on January 29, 2007, L. Cox stated that following the January 23, 2007, incident he was taken to the hospital where: (1) twenty-one stitches were applied to his face; (2) a CT scan of his head was performed; and (3) X-rays, although mentioned, were not performed. (*See* Docket Entry No. 64, Ex. 1). Upon his return from the hospital, he reported being transferred from a stretcher to a wheel-chair into a

cell downstairs from where he was originally being housed. He stated that he had to be removed from the wheelchair by three people because he was unable to move by himself, but that he could not recall the names of the individuals who had assisted him. He also reported having remained in his cell for two days. During this time, he asserted that he was unable to move, eat or do anything. He did not recall anyone having come to his cell to aid him nor did he recall being removed from his cell prior to being transported to UTMB in Galveston on January 26, 2007.

Clinical notes maintained by medical personnel at TDCJ detail a very different chronology of the events. According to multiple clinical notes contained in the record, L. Cox is alleged to have been seen standing, walking and capable of moving his hands and arms in a coordinated manner by TDCJ guards and personnel in the days immediately following the January 23, 2007, incident. (*See* Docket Entry No. 64, Ex. 9). For instance, according to one clinical note, dated January 25, 2007, Licensed Vocational Nurse Theresa Place reported that during her rounds at approximately 1700 hours on January 24, 2007, L. Cox was lying on the floor asleep and capable of moving his right arm without difficulty. (*Id.*) During this time, she alleges that he was seen scratching his face and then returning his arm to the floor. (*Id.*) She also notes that a security guard reported that L. Cox got up from his bunk and retrieved his breakfast tray from the cell door that morning. (*Id.*)

Another clinical note dated January 26, 2007, and signed by Monica Esslinger, indicates that at approximately 2110 hours, a Mrs. MacCartney called and requested that someone check in on L. Cox. (*Id.*) According to Mrs. MacCartney, she was concerned because she had received an anonymous phone call at home indicating that L. Cox was lying on the floor in his cell "acting weird.[5]" (*Id.*) After performing a check, Esslinger reported that L. Cox was lying on his right

5 It appears that Mrs. MacCartney's inquiry may have prompted TDCJ personnel to transfer L. Cox to UTMB in Galveston for further evaluation.

side causing his arm to turn purple, claiming that he was unable to move. (*Id.*) She also reported that Security Sergeant Longenbaugh stated that "he had seen [L. Cox] moving in his cell, not standing up but lying on the mattress and moving around." (*Id.*) Esslinger further asserted that Lt. Mills had informed her that L. Cox "had been seen by medical the last three days and [had] walked to medical during the day [that] day." (*Id.*).

Moreover, a report from Senior Warden Tim Morgan to the Emergency Action Center dated February 6, 2007, indicates that while RN Cavan Brophy prepared L. Cox for sutures immediately following the incident, L. Cox *began to complain of having pains in his neck*. (*See* Docket Entry No. 64, Ex. 10) (emphasis added). He also notes that PA Healy determined that L. Cox required further evaluation and *a neck brace was applied* and it was requested that L. Cox be transported off unit due to his complaints. (*Id.*)

An emergency record dated January 23, 2007, and signed by RN Cavan Brophy, however, indicates that L. Cox was examined in his cell at 9:45 and that during that time, *he denied having any neck pain* and that a *C Collar for transport was unable to be applied* due to risks and security. (*Id.*, Ex. 9 at 10) (emphasis added). This emergency record also notes that L. Cox was transported to a local emergency room at 9:48. (*Id.*)

The Warden's report also suggests that once admitted in the local emergency room at Huntsville Memorial Herman, L. Cox underwent several exams as well as a CT scan of his head area *and* spine. (*Id.*, Ex. 10). According to the Warden's report, "[t]he results of examination completed by the imaging of the brain and posterior area of the head . . . revealed no abnormal areas to the spine" and only facial injuries were noted. (*Id.*) The Warden's report further maintains that "it was documented by the Medical Dept. that [L. Cox] was seen by the Medical

Staff on duty everyday until he departed the unit on January 26 [at 11:30 hours], due to recommendations by UTMB." (*Id.*) The Warden ultimately concluded that the staff acted appropriately at the time pending further investigation by the Office of Inspector General. (*Id.*)

Further, disciplinary records produced by the defendants denote that a "major" disciplinary hearing involving L. Cox relative to a charge of assault against Officer Garcia arising out of the January 23, 2007 incident was held on January 26, 2007 at 9:58 a.m. (*See* Docket Entry No. 64, Ex. 6.) The records signify that L. Cox was given notice of this hearing on January 25, 2007 at 9:57 a.m. *Id.* The notice indicated that the hearing was to be held on January 26, 2007 at 9:58 p.m. and that L. Cox refused to attend. *Id.* A TDCJ Service Investigation Worksheet attached to notice also denotes that L. Forrest was assigned as a "counsel substitute" for L. Cox because L. Cox was being housed "in segregation." *Id.* The TDCJ Hearing Worksheet indicates that L. Cox, through L. Forrest, pleaded not guilty to the assault charge, but was found guilty. *Id.* No significant hearing notes were taken nor were there any witnesses present. *Id.* Further, no documentary evidence was admitted at the hearing. *Id.* The "summation/mitigation" section of the worksheet denotes the following: "leniency, cooperative, [defendant's] honesty plea." *Id.* The sanction assessed against L. Cox at the hearing consisted of 45 days and/or hours of commissary work. *Id.*

Remarkably, however, at and/or near the time of the "major" disciplinary hearing, a medical transfer note obtained from the Estelle High Security Unit specifies that L. Cox was being transported by ambulance to the UTMB emergency room. (*See* Docket Entry No. 64, Exs. 8 & 11). According to records obtained from the Emergency Action Center of the TDCJ, L. Cox arrived at the Galveston Unit of the UTMB emergency room on January 26, 2007 at 10:00 a.m., an hour and a half prior to the time the Warden's report indicates that he departed from the

Estelle Unit, with multiple injuries presumably from the January 23, 2007 use of force incident at the Estelle Unit. (*Id.*, Ex. 11). Upon his arrival, he was admitted into the intensive care unit with a "C-Spine injury, quadriplegi[a] and renal failure." *Id.* He was placed on the serious critical list at approximately 10:45 p.m. on that same day. He remained in the intensive care unit until his death on February 6, 2007, at approximately 8:55 a.m. *Id.*

As support for their motion for summary judgment on the basis of qualified immunity with respect to the plaintiffs' medical indifference claim, the defendant officers have filed sworn affidavits which merely state that: (1) they were personally involved in the January 23, 2007 use of force incident involving L. Cox; (2) Sergeant Johnson called for a video camera and medical staff per protocol; (3) following the incident they were relieved by other officers per protocol and returned to their normal duties; and (4) subsequently, they were reassigned from the "High Security Building" pending an investigation of the incident and had no further contact with L. Cox. (*See* Docket Entry Nos. 60 and 61.)

Indeed, under the incomplete and inconsistent facts presented above, the timeline of L. Cox's medical treatment following the January 23, 2007 incident remains unclear. What is clear, however, is that: (1) L. Cox was paralyzed upon his arrival at UTMB and reeked of urine and feces, after remaining in his cell for two days following the use of force incident by the defendant officers on January 23, 2007; and (2) the Galveston County Medical Examiner ruled L. Cox's cause of death a homicide caused by "medical neglect complicating blunt force trauma." Thus, when construing all facts and reasonable inferences in the light most favorable to the plaintiffs, the Court determines that the evidence presented demonstrates that genuine issues of material fact exist concerning whether the defendant officers were deliberately indifferent to L. Cox's serious medical needs.

The evidence contained in the record raises serious concerns as to whether the defendant officers were well aware that L. Cox needed emergency medical attention, but intentionally denied and/or delayed his access to adequate medical care. Under the facts presented, a reasonable jury could conclude that given the extent of the injuries sustained by L. Cox, the defendant officers were fully aware that L. Cox was in imminent danger, but that they, nevertheless, acted with deliberate indifference towards his medical needs. Moreover, given the factual inconsistencies set forth above, a reasonable jury could also conclude that the defendants intentionally failed to promptly respond to L. Cox's medical needs and that their delay in providing him with the appropriate medical care resulted in his death. Accordingly, in light of the demanding strictures applicable to the instant motion and given the nature of the actions and inactions taken by the defendant officers and prison personnel relative to the January 23, 2007 incident, the defendant officers' motion for summary judgment on the basis of qualified immunity with respect to the plaintiffs' § 1983 medical indifference claim is denied. *See Farmer*, 511 U.S. at 842, 114 S. Ct. at 1981 (noting "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *see also Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 – 36 (reasoning that credibility questions and choices concerning conflicting versions of factual events are not matters appropriate for summary judgment disposition).

**C. The Plaintiffs' Claims for Declaratory Judgment and/or Injunctive Relief**

In their First Amended Original Complaint, the plaintiffs allege that Texas' policies "concerning the protection of those persons entrusted to its care are unconstitutional as written and/or are unconstitutional as applied pursuant to [its] pattern and practice." (Docket Entry No.

28 at 8.) To this end, the plaintiffs seek injunctive relief from this Court "requiring the State to conform to the requirements of the federal Constitution and statutes as they pertain to the protections of persons entrusted to their care." (*Id.* at 9). They further request that the Court issue an order concerning the state of Texas' oversight and "granting injunctive relief against the state of Texas and/or its officials who implemented the alleged unconstitutional polices, mandating that they be changed to conform to federal law." (*Id.*) In contrast, the defendant officers contend that the plaintiffs lack standing to request either declaratory relief or injunctive relief in the instant action. As a consequence, this Court must first consider whether the plaintiffs have standing to challenge the constitutionality of such policies by way of the instant action.

Pursuant to Article III, the elements of standing are: "1) injury, 2) causation, and 3) redressability." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001)). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer*, 341 F.3d at 358 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 1665, 75 L. Ed.2d 675 (1983); *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991)). "[A] substantial and continuing controversy [must exist] between [the] two adverse parties" based on the allegations presented. *Bauer*, 341 F.3d at 358 (citing *Emory v. Peeler*, 756 F.2d 1547, 1551 – 52 (11th Cir. 1985)). Moreover, "[t]he plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred [and] the continuing controversy . . . must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* Further, "[t]o obtain equitable relief for past wrongs, a

plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Bauer*, 341 F.3d at 358.

Because the plaintiffs have alleged no facts from which it appears that there is a substantial likelihood of an ongoing injury or a definite threat of future injury, there is no actual case or controversy for this Court to resolve and thus, the plaintiffs lack standing to seek either declaratory or injunctive relief. Accordingly, the Court determines that the defendant officers are entitled to summary judgment on the plaintiffs' claims for declaratory and/or injunctive relief in this instance.

## VI. CONCLUSION

Based on the foregoing discussion, the defendant officers' motion for summary judgment for lack of standing as to the plaintiffs' survival causes of action is DENIED; their motion for summary judgment on the plaintiffs' § 1983 medical indifference claim is also DENIED. The defendant officers' motion for summary judgment on the plaintiffs' claims for declaratory and injunctive relief is GRANTED.

IT IS SO ORDERED.

SIGNED at Houston, Texas this 1st day of December, 2009.

Kenneth M. Hoyt
United States District Judge